# EXHIBIT 1

| | |
|---|---|
| SUPREME COURT OF THE STATE OF NEW YORK<br>COUNTY OF QUEENS | Index No.<br>**SUMMONS** |
| EAST COAST PLASTIC SURGERY, P.C.<br>　　　　　　　　　　Plaintiff(s),<br><br>- Against -<br><br>AETNA HEALTH AND LIFE INSURANCE COMPANY,<br>　　　　　　　　　　Defendant(s). | Plaintiff's Address:<br>EAST COAST PLASTIC SURGERY, P.C.<br>333 Broad Street<br>Red Bank, NJ 07701-2178<br><br>Basis for Venue:<br>Defendant transacts business within Queens County |

To the above named defendant:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you in the amount of $291,521.75.

Dated:　　　August 29, 2022

　　　　　　　　　　　　　　　　　　　　　*Michael Baglio*
　　　　　　　　　　　　　　　　　　　　　—————————————
Defendant's Address:　　　　　　　　　　　**LEWIN & BAGLIO, LLP**
AETNA HEALTH AND LIFE INSURANCE　　By: Michael Baglio, Esq.
COMPANY　　　　　　　　　　　　　　　Attorneys for the Plaintiff
　　　　　　　　　　　　　　　　　　　　　1100 Shames Drive
c/o Department of Financial Services　　　　Suite 100
151 Farmington Avenue　　　　　　　　　Westbury, New York 11590
Hartford, CT 06156　　　　　　　　　　　Tel: (516) 307- 1777
　　　　　　　　　　　　　　　　　　　　　Fax: (516) 307- 1770

　　　　　　　　　　　　　　　　　　　　　L&B File No.: 2126.COM.13 (R)

.

L&B File No.: 2126.COM.13 (R)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Index No.:

EAST COAST PLASTIC SURGERY, P.C.

COMPLAINT

                        Plaintiff(s),

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,
                        Defendant(s).

Plaintiff, EAST COAST PLASTIC SURGERY, P.C., alleges:

1) This is an amount of payment case because this is an action by an out-of-network health care provider to recover payment from an insurer. This action does not include any claims in which benefits were denied, nor does it challenge any coverage determinations.

2) This is not a right to payment case because the Defendant-insurer has already adjudicated the claim(s) at issue, has determined that Plaintiff's claim(s) were for covered medical services rendered to the relevant patient, and has issued payments-payments that were not what was offered to induce performance of the services at issue.  And, that is the reason for this lawsuit.

3) SM[1], a consumer of the Defendant's product, required a medical procedure called bilateral breast reduction.

4) Prior to the service being rendered the insurer offered Plaintiff to reimburse the service at the 80 percent reasonable and customary rate.  But after receiving the benefit of its bargain-bilateral breast reduction rendered to its consumer-the insurer reneged by making payment that was not at 80 percent reasonable and

---

[1] SM is an individual patient referred to solely by their initials to avoid disclosure of personally identifiable information.

L&B File No.: 2126.COM.13 (R)

customary. The payment was not what was offered, was late pursuant to NY statutory standards, and incomplete or unreasonable according to industry standards.

## JURISDICTION, VENUE, AND PARTIES

5) This Court has personal jurisdiction over the parties because Defendant AETNA HEALTH AND LIFE INSURANCE COMPANY, (herein after " Aetna")is an insurance company licensed and authorized to do business in the State of New York; Aetna, violated New York Law while doing business in New York State.

6) Aetna transacts business in QUEENS County.

7) EAST COAST PLASTIC SURGERY, P.C. (Herein after ECPS) is a Professional Corporation that provides health services in the State of New Jersey. ECPS is the entity through which Dr. Norman Rowe and Dr. Charles Pierce do business.

## FACTUAL ALLEGATIONS

A. Introduction to Managed Care

8) A health insurance product is a package of health insurance coverage benefits that are offered using a particular product network type within a service area.

9) Health insurance plans, with respect to a product, are the pairing of the health insurance coverage benefits under the product with a particular cost sharing structure, provider network, and service area.

10) Many of ECPS's patients are consumers of a health insurance products and use those products to arrange for and manage the costs of their medical treatment

11) At all relevant times, "SM" was a consumer of a health insurance product sold by Aetna.

12) SM relied on an insurance product sold by Aetna to arrange for and manage the costs of their medical treatment.

1. *Use of Network Status to Determine Reimbursement*

13) The amount Aetna pays to medical providers is the result of a calculation. The minuend for that calculation is determined by a medical provider's network status.

14) Aetna determines a medical provider's network status by whether or not the provider has signed a Aetna network agreement. A provider who has joined the network has negotiated and agreed to accept a rate of payment for the services they will provide to consumers of Aetna's products and plans, which is called the in-network rate.

15) ECPS intentionally refused to join any provider network organized by Aetna so that ECPS is always free to negotiate payment for services they render to individual patients.

16) At all times relevant, ECPS intentionally refused to join any insurer provider network organized by Aetna so that ECPS could freely choose to whom they would render medical services.

17) ECPS never agreed to be bound by the terms and conditions of SM's health insurance plan.

18) Because ECPS refused to join a provider network Aetna treats ECPS as an out-of-network provider.

19) Not all plans provide out-of-network benefits, but when they do Aetna determines the amount it will allow for a covered service to an out-of-network provider, this amount is called the allowed amount.

20) In the healthcare industry, usual, customary, and reasonable (UCR) is the charge for a service in a geographic area based on what providers in the area usually charge for the same or similar medical services. The 80th percentile of UCR is a percentile threshold recognized in the health insurance industry as a reasonable value for a medical service.

21) FAIRHealth data is a recognized in the healthcare industry as a reliable source for provider pricing and for determining UCR.

22) An insurer will typically disclose the allowed amount for a service rendered by an out-of-network provider as a percentage of UCR; this is typically called the out-of-network rate or the OON rate.

23) Indeed, New York Insurance Law §§ 3217-a(a)(19)(B) and 4324(a)(20)(B) and Public Health Law § 4408(1)(t)(ii) require health plans to disclose the amounts paid for out-of-network services as a percentage of UCR. Insurance Law §4324 states that the 80th percentile of providers' charge for a service in a geographic area is the usual and customary cost for that service.

24) Bilateral breast reduction was indicated for SM and SM desired ECPS perform bilateral breast reduction.

L&B File No.: 2126.COM.13 (R)

25) ECPS, however, was unwilling to risk non-payment to perform bilateral breast reduction on SM.

26) Therefore, on or about March 25, 2020, an ECPS employee contacted Aetna and spoke to a/an Aetna employee.

27) ECPS employee identified itself as an out-of-network provider, indicated ECPS was willing to render bilateral breast reduction to SM.

28) During phone conversations between ECPS's employees and Aetna's employees, Aetna employee represented that the total allowed amount for this service was based upon 80 percent reasonable and customary. for covered services rendered to SM. Aetna Employee Danielle O provided this reference number for the call: 5156175880.

29) 80 percent reasonable and customary is an industry term which means Aetna would pay an amount equal to 80 percent of the reasonable and customary percentile threshold for that service in the geographic area where the services were rendered.

30) On or about March 31, 2020, Aetna told ECPS that bilateral breast reduction rendered to SM was a covered service.

31) On July 15, 2020, ECPS accepted Aetna's offer by rendering bilateral breast reduction to SM.

32) ECPS submitted its billing to Aetna.

B. Explanation of billing

33) ECPS billed Aetna a total of $300,000.00 for the services rendered to SM on July 15, 2020 indicating the services it rendered using industry standard billing

L&B File No.: 2126.COM.13 (R)

codes, known as "CPT codes." ECPS also substantiated the use of those CPT codes by including the relevant medical documentation with its billing.

34) It is an industry standard practice for Aetna to rely upon the billing codes submitted by a medical provider to determine the amount Aetna would pay.

35) Indeed, ECPS attested to the accuracy of its claims.

36) ECPS billed Aetna $150,000.00 for the services Dr. Norman Rowe rendered. Aetna adjudicated these claims and determined that the claims were for covered services rendered to SM because Aetna paid $5,438.35 for the services Dr. Norman Rowe rendered.

37) ECPS billed Aetna $150,000.00 for the services Dr. Charles Pierce rendered. Aetna adjudicated these claims and determined that the claims were for covered services because Aetna paid $3,039.90 for the services Dr. Charles Pierce rendered.

## C. Explanation of monies owed

38) Aetna did not do what it was required to do.

39) Aetna accepted ECPS's performance.

40) Aetna did deny the claim because ECPS incorrectly performed bilateral breast reduction.

41) Aetna did not deny the claim because the services ECPS billed were not covered.

42) Aetna did not deny the claim because there was a reduction in SM's benefits such that ECPS was not entitled to further payment.

43) Aetna did not deny the claim because another insurer or corporation or organization was liable for all or part of the bill.

44) Instead of denying the claim, Aetna adjudicated ECPS's claim, determined that bilateral breast reduction was covered and intentionally issued a payment, which was late and unreasonable.

1. *Aetna's automated claims processing results in underpaid claims*

45) Aetna has, as is common in the health insurance industry, largely automated its claims adjudication process.

46) Aetna has designed and implemented its automated claims adjudication process to ensure that claims for payment received by Aetna for all services rendered by any out-of-network providers are intentionally underpaid.

47) Aetna intentionally underpays out-of-network services to artificially reduce gross costs for medical services and increase its profits.

48) Every dollar that Aetna was obligated to pay that it didn't pay was a dollar that was counted directly to profits. While underpayment serves as a windfall for Aetna, being misled into providing medical services leaves the medical provider with a broken promise and the legal bills associated with attempting to be made whole again.

49) When Aetna processes the claims it receives it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical providers network status.

50) CPT codes are among the most important pieces of information included in a claim to Aetna, and a primary determinant of the amount Aetna will ultimately pay.

51) The type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what Aetna will pay on the claim.

52) Aetna intentionally issues improper and reduced payment for services rendered by out-of-network providers.

53) The automated application of industry standard limitations on reimbursement means that Aetna routinely improperly applies limitations on reimbursement. The improper application of limitations on reimbursement improperly reduces the amount of Aetna's payment

54) The delta between what Aetna paid on the claim identified in the Complaint and what Aetna should have paid is so substantial it foreclose the possibility that Aetna merely made a mistake.

55) The amount paid to ECPS by Aetna $8,478.25 is not a reasonable value for bilateral breast reduction because it is not consistent with the prevailing and customary rates paid for bilateral breast reduction; as a result ECPS suffered damages.

56) Aetna did not use 80 percent reasonable and customary to calculate the payment for bilateral breast reduction, therefore, Aetna incorrectly calculated its payment to ECPS; as a result ECPS suffered damages.

L&B File No.: 2126.COM.13 (R)

57) Aetna intentionally incorrectly calculated 80 percent reasonable and customary resulting in an underpayment to ECPS for bilateral breast reduction; as a results ECPS suffered damages.

58) Aetna did not properly apply industry coding standards for determining any recognized limitations on reimbursement for bilateral breast reduction, therefore, Aetna incorrectly calculated its payment to ECPS; as a result ECPS suffered damages.

## FIRST CAUSE OF ACTION- BREACH OF CONTRACT

59) ECPS repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

60) On or about March 25, 2020, Aetna verbally offered to pay 80 percent reasonable and customary for covered medical services rendered to SM.

61) On or about March 31, 2020, Aetna verbally communicated to ECPS that bilateral breast reduction surgery rendered to SM would be a covered service.

62) On or about July 15, 2020, ECPS accepted Aetna's offer by rendering bilateral breast reduction to SM and submitted its billing to Aetna.

63) Aetna accepted ECPS's performance.

64) Aetna adjudicated ECPS's claim, determined the services were covered and issued a payment.

65) Aetna has failed and refuses, however, to issue payment to ECPS at the 80 percent reasonable and customary rate for the services as agreed.

L&B File No.: 2126.COM.13 (R)

66) Aetna has refused to pay the balance after being demanded to do so by ECPS.

67) Aetna has not treated ECPS fairly and has acted in bad faith.

68) As a result of Aetna's failure to perform under their agreement ECPS has suffered damages.

## SECOND CAUSE OF ACTION UNJUST ENRICHMENT

69) ECPS repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

70) Aetna induced ECPS to render bilateral breast reduction to SM by offering to pay for bilateral breast reduction at the 80 percent reasonable and customary rate.

71) ECPS conferred a benefit upon Aetna under circumstances where Aetna knew or should have known that ECPS expected to be reasonably compensated for the benefit conferred according to usual and customary prevailing rates for bilateral breast reduction, the services rendered to SM.

72) Aetna received the benefit of its bargain, i.e., ECPS rendering bilateral breast reduction to SM.

73) ECPS would not have otherwise provided the medical services without Aetna's agreement to pay 80 percent reasonable and customary.

74) When ECPS rendered bilateral breast reduction to SM ECPS made it possible for Aetna to fulfill its contractual obligation to manage SM costs for medically necessary services.

75) Relying on Aetna's offer of payment at 80 percent reasonable and customary, ECPS forbore from collecting payment in full from SM prior to rendering bilateral breast reduction.

76) If Aetna did not offer to pay 80 percent reasonable and customary then SM would not have received bilateral breast reduction from ECPS for the same out-of-pocket costs.

77) The additional benefits conferred by ECPS when ECPS agreed to render bilateral breast reduction based on Aetna's promise of payment included SM's perception, valid or otherwise, that Aetna facilitated SM receiving bilateral breast reduction from ECPS; the esteem and the expectancy of SM's continued customer patronage is called good will and it has a value to Aetna.

78) Under the circumstances, it would be unfair to permit Aetna to retain the benefits conferred upon it without Aetna paying a reasonable value to ECPS.

## THIRD CAUSE OF ACTION- PROMISSORY ESTOPPEL

79) ECPS repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

80) Aetna made a clear and unambiguous promise to pay 80 percent reasonable and customary for bilateral breast reduction rendered to SM and should have expected that ECPS would rely upon that promise.

81) Aetna should have expected ECPS to rely upon its promise because, among other reasons, Aetna knew that ECPS was treating and it made a promise on

L&B File No.: 2126.COM.13 (R)

3/31/20 to issue payment for bilateral breast reduction at the 80 percent reasonable and customary rate.

82) Aetna should have expected ECPS to rely upon its promise because, among other reasons, Aetna issued numerous payments to ECPS for the same healthcare services rendered by ECPS at higher percentage of the billed amount under the same or similar circumstances.

83) ECPS relied on Aetna's promise to its detriment, causing substantial damages equal to the reasonable value of the medical services provided by ECPS.

## FOURTH CAUSE OF ACTION— VIOLATION OF NEW YORK'S PROMPT PAY LAW

84) ECPS repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

85) Pursuant to their agreement and within 120 days of the date the services were rendered to SM, ECPS submitted its claim to Aetna.

86) Aetna did not issue payment of the undisputed amount within 45 days of the date of service because the payment it issued was unreasonable based upon reimbursement standards in the industry,

87) Aetna did not object to reimbursement or request further information from ECPS regarding ECPS's billing within forty-five (45) days of receipt of the claim.

88) ECPS is entitled to payment of $291,521.75 PLUS interest at the rate of ONE PERCENT (1%) per month computed from THIRTY (30) days after the date the

claim was submitted to the Aetna until the amount due is paid in full, pursuant to Insurance Law § 3224-a.

L&B File No.: 2126.COM.13 (R)

FILED: QUEENS COUNTY CLERK 08/29/2022 02:13 PM  INDEX NO. 717909/2022
NYSCEF DOC. NO. 1  RECEIVED NYSCEF: 08/29/2022

DocuSign Envelope ID: B7139A59-4950-430E-AA25-740A8B14025B
Case 1:22-cv-05820-EK-RLM Document 1-1 Filed 09/29/22 Page 16 of 20 PageID #: 21

89) **WHEREFORE**, EAST COAST PLASTIC SURGERY, P.C. demands judgment in the amount of $291,521.75 together with statutory interest; or in the alternative judgment in the amount of $129,515.75, and pre-judgment interest, and court costs together with granting such other and further relief as the Court may deem just and proper.

**LEWIN & BAGLIO, LLP**
Attorneys for the Plaintiff
1100 Shames Drive
Suite 100
Westbury, New York 11590
Tel: (516) 307-1777
Fax: (516) 307-1770
L&B File No.: 2126.COM.13 (R)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

EAST COAST PLASTIC SURGERY, P.C.

        Plaintiff(s),

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,

        Defendant(s).

Index No.:

VERIFICATION

I, MIA SHER being duly sworn, deposes and says:

I am an officer of EAST COAST PLASTIC SURGERY, P.C., the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Dated: August 29, 2022

_____

Sworn to before me this 29 day of AUGUST, 2022

MICHELE B SAGURTON
Notary Public, State of New Jersey
Comm. # 50066395
My Commission Expires 8/18/2027

Notary Public

L&B File No.: 2126.COM.13 (R)

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

AETNA
P.O. BOX 981106
EL PASO, TX 79998-1106

1. MEDICARE / MEDICAID / TRICARE / CHAMPVA / GROUP HEALTH PLAN / FECA BLK LUNG / OTHER [X]

1a. INSURED'S I.D. NUMBER: 6141

2. PATIENT'S NAME: M____, S____

3. PATIENT'S BIRTH DATE: 1991  SEX: F [X]

4. INSURED'S NAME: M____, S____

5. PATIENT'S ADDRESS: 9730 57TH AVENUE APT 1G
CITY: CORONA  STATE: NY
ZIP CODE: 11368  TELEPHONE: (929) 800-7552

6. PATIENT RELATIONSHIP TO INSURED: Self [X]

7. INSURED'S ADDRESS: 9730 57TH AVENUE APT 1G
CITY: CORONA  STATE: NY
ZIP CODE: 11368  TELEPHONE: (929) 800-7552

9. OTHER INSURED'S NAME: NONE

10. IS PATIENT'S CONDITION RELATED TO:
a. EMPLOYMENT? NO [X]
b. AUTO ACCIDENT? NO [X]
c. OTHER ACCIDENT? NO [X]

11. INSURED'S POLICY GROUP OR FECA NUMBER:
a. INSURED'S DATE OF BIRTH: 1991  SEX: F [X]

d. IS THERE ANOTHER HEALTH BENEFIT PLAN? NO [X]

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE
SIGNED: SIGNATURE ON FILE  DATE: 07/16/2021

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE
SIGNED: SIGNATURE ON FILE

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM: 07 15 20  TO:

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY
A. N62    B. L304    ICD Ind: 0

24. 

| A. DATE(S) OF SERVICE From | To | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT | I. ID QUAL | J. RENDERING PROVIDER ID # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07 15 20 | 07 15 20 | 24 | | 19318 | 50 | AB | 150000 00 | 2 | | NPI | 1659548279 |

25. FEDERAL TAX I.D. NUMBER: 1342  EIN [X]

28. TOTAL CHARGE: $150000.00
29. AMOUNT PAID: $2822.98

31. SIGNATURE OF PHYSICIAN OR SUPPLIER
PIERCE, CHARLES A. D
SIGNED: 07/16/2021

32. SERVICE FACILITY LOCATION INFORMATION
HACKENSACK SPECIALTY AMB
321 ESSEX STREET
HACKENSACK, NJ 07601-2066
a. 1285179564

33. BILLING PROVIDER INFO & PH#
EAST COAST PLASTIC SURGERY
333 BROAD STREET
RED BANK, NJ 07701-2178
a. 1902259187

| | |
|---|---|
| SUPREME COURT OF THE STATE OF NEW YORK<br>COUNTY OF QUEENS | Index No.: |
| EAST COAST PLASTIC SURGERY, P.C.<br>        Plaintiff(s),<br><br>- Against -<br><br>AETNA HEALTH AND LIFE INSURANCE COMPANY,<br>        Defendant(s). | AFFIRMATION |

STATE OF NEW YORK)
COUNTY OF NASSAU) ss.

**ATTORNEYS VERIFICATION AND CERTIFICATION PURSUANT TO § 130-1**:

I, Michael Baglio, Esq., an attorney and counselor at law, duly admitted to practice in the Courts of the State of New York and a member with the law firm **LEWIN & BAGLIO, LLP,** attorneys for plaintiff herein, affirms the following to be true under penalties of perjury:

I have read the foregoing **COMPLAINT** and know the contents thereof, and upon information and belief, I believe the matters alleged therein to be true.

The reason this verification is made by deponent and not by plaintiff is that plaintiff resides in a county other than the one in which your deponent's office is maintained.

The source of your deponent's information and the grounds of my belief are communications, papers, reports and investigations contained in my file.

Dated: August 29, 2022
   Westbury, New York

                    *Michael Baglio*
                 By: Michael Baglio, Esq.

L&B File No.: 2126.COM.13 (R)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

EAST COAST PLASTIC SURGERY, P.C.
        Plaintiff(s),

Index No.:

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,
        Defendant(s).

Pursuant to Section 130-1 of the rules of the chief administrator (22 NYCRR) I certify that to the best of my knowledge, information and belief, Formed after an inquiry reasonable under the circumstances, the within Summons and Verified Complaint are not frivolous.

*Michael Baglio*
By: Michael Baglio, Esq.

# SUMMONS AND COMPLAINT

### ATTORNEYS FOR THE PLAINTIFF

LEWIN & BAGLIO, LLP
1100 Shames Drive
Suite 100
Westbury, New York 11590
516-307-1777
L&B File No.: 2126.COM.13 (R)

To:

Attorney for defendant:
Service of a copy of the within SUMMONS AND COMPLAINT is hereby admitted.

Dated: _____    _____
                    Attorney for Defendant

L&B File No.: 2126.COM.13 (R)